THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* AGAPITO VALENTÍN SANTANA, Defendant and Appellant.

No. CR-63-55.      Decided October 21, 1963.

*Víctor Velasco Gordils* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Irene Curbelo, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Appellant was accused of (subsequent) grand larceny consisting of illegally taking from the residence of the Santonis a diamond ring worth $1,000 belonging to Haydeé García de Santoni. The proceedings commenced before a jury, but at defendant's request it was continued before a judge without a jury. The evidence for the prosecution having been introduced and defendant having failed to in-

troduce any evidence for the defense, the court found him guilty of the offense and sentenced him to serve from 10 to 14 years in the penitentiary at hard labor.

On appeal he assigns three errors, the first of which reads as follows: "The court proved the degree of the offense of larceny upon qualifying the prejudiced party to testify that the stolen ring was worth over $100."

■ This assignment is predicated on certain questions posed by the judge to witness Haydeé García de Santoni. On examination by the prosecuting attorney said witness had testified that twenty-five years ago her husband had paid $500 for the stolen ring, that it was of white gold and had seven diamonds. On cross-examination she stated that she knew of the fact by information and, consequently, its elimination was ordered. On redirect examination by the prosecuting attorney he asked her about the estimated value of the ring. The defense protested and then the judge intervened saying that the witness should be better qualified, and forthwith he examined her as to whether she had ever bought other diamond rings or had ever witnessed transactions in such kind of jewelry, and upon her affirmative answer he asked her about the value of the stolen ring and the witness answered that she had no doubt that its value was $700.

Really, this is not the improper intervention of a magistrate which we condemned in *People* v. *Aletriz*, 85 P.R.R. 621 (1962) and in other cases.

Nor can it be affirmed that the judge proved by means of his questions the value of said jewel because, irrespective of Mrs. Santoni's testimony, there is evidence in the record of its value. Detective Ángel Luis Sánchez Vega testified, without objection of the defense, that Mrs. Santoni had informed him that the missing diamond ring was worth $1,000. In any event, the judge's questions were aimed at clarifying the doubtful question of whether or not Mrs. Santoni had knowledge of the value of diamond rings. The ruling estab-

lished in the case of *People* v. *Vázquez*, 87 P.R.R. 698 (1963) is somewhat more applicable to the present case.

Neither the first nor the second error were committed. The second assignment alleges that the "court admitted as voluntary defendant's oral confession, which actually and really was inadmissible because of its involuntariness."

Appellant raises two questions in the discussion of this second error. First, he alleges that the action of taking him to police headquarters constituted a detention and that it being an illegal detention, the evidence related to defendant's oral confession given at police headquarters in the presence of detectives Sánchez, Green, and Tapia should have been suppressed. Second, he maintains that said confession was inadmissible because it was involuntary.

It is fitting to make at this moment a brief summary of the facts.

On December 7, 1960 appellant had worked one month for the Santonis as gardener and other jobs. On said date a diamond ring disappeared from the residence of the Santonis. The police were notified, and on said date detective Ángel Luis Sánchez appeared personally at said residence to make the corresponding investigation. Among other things he inquired as to the persons who worked there. Next day he returned about 11:00 a.m. and found defendant at the Santonis' residence. He took him to police headquarters for questioning. At first, defendant denied any participation in the theft. He was served food at lunchtime. When detective Sánchez, who was the only one who questioned him, although two other detectives were present, asked him whether he had any criminal record, he answered negatively. Said detective confronted him with his penal record and then defendant confessed he had stolen the jewel and pawned it to a certain Juan Avilés. Defendant agreed to help find the ring and went with the detective to Barrio La Perla where, after speaking to Juan Avilés, the jewel was re-

covered. Then they went to Mrs. Santoni's house so that she could identify it. There, defendant readmitted the commission of the offense. On the night of that day he was committed to jail after a judge had found probable cause.

On December 14, 1960 and at the office of prosecuting attorney Roberto de Jesús, the defendant confessed in writing the commission of the offense.

On the date of the disappearance of the jewel, there were two persons who, because of their work and their presence in the Santonis' residence, could either have knowledge of some material fact related to the theft or could be suspects. Said persons were the Santonis' maid and defendant-appellant. It seems logical that both persons be examined in the investigations carried out.

■ Defendant's examination was carried out at police headquarters. Assuming that defendant was then under detention and that said detention was illegal, as he alleges, said circumstance alone is insufficient to consider the oral confession involuntary and, consequently, inadmissible in evidence. *People* v. *Fournier*, 77 P.R.R. 208 (1954). *People* v. *Martínez*, 86 P.R.R. 390 (1962). "The decisive point," as we said at p. 242 in the former case upon rejecting the McNabb ruling, "is the voluntariness of the confession, not the illegality of the detention."

■ Defendant further maintains that the oral confession made at police headquarters was obtained through physical and psychological coercion.

As to the physical coercion the evidence was contradictory but the judge decided the conflict against defendant. In so doing he did not abuse his discretion. Defendant was the only one to testify that the detectives hit him with their fists and with a *blackjack*; that they hit him on the chest with the *blackjack* and on his face and back of the head with their fists, producing swelling on his face. Yet, Mrs. Santoni testified that said night she saw defendant in her resi-

dence and she did not see any swelling or marks. She saw him later that night at police headquarters and he did not show any bruises or injuries on his face. Detective Sánchez stated that neither he nor the other detectives would have attacked defendant. He did not see any bruises on his face. The Official of Records of "La Princesa" jail testified that it did not appear in the record that defendant had complained of anything on being committed to jail.

Was the oral confession given at headquarters obtained through psychological coercion? No. Defendant was examined for a few hours, two or three at most. Food was not denied to him nor was he examined in relays of officers. It cannot be said that defendant was "frozen" or "softened" because of the duration of his detention. He is a defendant with penal antecedents, already familiar with police investigations. We do not have here "circumstances of pressure against the power of resistance of the person confessing." *People* v. *Fournier*, 80 P.R.R. 376 (1958).

Not even the circumstance that defendant was confronted with his penal record would be against the voluntariness of the oral confession. In the case of *Martínez, supra,* we cite the case of *United States, ex rel. Caminito* v. *Murphy*, 222 F.2d 698, 700–701, where it was decided that "neither the unlawful detention for many hours nor the deceit in confronting Caminito with disguised police officers . . . would suffice to vitiate the confessions as unconstitutionally obtained." A confession has not been considered involuntary either because it is attributed to the fact that defendant has been informed of incriminatory testimonies made by a supposed accomplice. *Lisenba* v. *California*, 314 U.S. 219, 86 L.Ed. 166.

Confronting defendant in this case with his penal record, after having denied that he had such antecedents, could in no way disturb his spirit, nor break his will to confess his offense, for he had a complete knowledge of said antecedents.

■ In the case of *People* v. *Meléndez*, 80 P.R.R. 759 (1958), we stated in a footnote that in some American jurisdictions it is the duty of the trial judge in every case, when he has reason to suspect that a confession has been wrung from the defendant by illegitimate means, to absolutely refuse to permit any evidence as to the confession until everyone present at such examination has testified. In said case we did not adopt said ruling, nor need we decide now whether or not it should prevail in Puerto Rico, because in the case at bar only one detective examined defendant and said detective testified at the trial.

Finally, defendant assigns as the last error the admission in evidence of the written confession given before the prosecuting attorney six days after his detention. The error is frivolous. The evidence establishes that said confession was made voluntarily. There were no threats or promises on the part of the prosecuting attorney. All the circumstances show that there exists no probability that said confession was the result of prior coercive influence.

■ Defendant's contention is, however, that when he made said written confession he was under accusation and he was the star witness for the defense. Consequently, he argues that the prosecuting attorney could not confer with the witness for the defense as provided by § 11 of the Code of Criminal Procedure.

On the date of the written confession—December 14, 1960—no information had yet been filed against defendant. He was under arrest because a magistrate had found probable cause against him. In any event the provision of said § 11 refers to defendant's witnesses and not to defendant himself. *People* v. *Cruz*, 87 P.R.R. 124 (1963) and *People* v. *Super. Court; Ramos, Int.*, 80 P.R.R. 679 (1958).

The judgment appealed from will be affirmed.